**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| LANDSTAR SYSTEM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:22cv1417 (LMB/WEF) |
| | ) | |
| LANDSTAR  ONWAY, INC., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GKARNIK VARNTANIAN | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>REPORT AND RECOMMENDATION</u>

This trademark infringement and unfair competition action is before the Court on Plaintiff

Landstar System, Inc.'s Motion for Default Judgment against Defendants Landstar Onway, Inc.

and its owner, Gkharnik Varntanian.  (Dkt. 28).  After the Defendants failed to respond to

Plaintiff's Motion for Default Judgment or appear at a hearing on May 26, 2023, the undersigned

United States Magistrate Judge took the matter under advisement.  For the reasons stated below,

the undersigned now recommends that Plaintiff's Motion for Default Judgment be granted as to

Defendant Landstar Onway, Inc. but denied as to Defendant Gkarnik Varntanian because Plaintiff

failed establish it properly served Mr. Varntanian with process in accordance with Federal Rule of

Civil Procedure 4(e). [1]

---

[1] Relevant filings before the Court include the Complaint (Dkt. 1) ("Compl."); Summons Return
Executed as to Defendant Landstar Onway, Inc. (Dkt. 15); Summons Return Executed as to
Defendant Gkarnik Varntanian (Dkt. 22); Plaintiff's Motion for Default Judgment and
Memorandum of Points and Authorities in Support (Dkt. 28) ("Mot. Default J."); Declaration of
Gloria Brown (Dkt. 28-1) ("Brown Decl."); Plaintiff's Supplemental Memorandum as to Service

## I.   <u>SUMMARY OF PLAINTIFF'S CLAIMS</u>

Plaintiff Landstar System, Inc. ("Plaintiff Landstar" or "Plaintiff") is incorporated under the laws of the State of Delaware and maintains its principal place of business in Jacksonville, Florida.  (Compl. ¶ 3).  Plaintiff Landstar provides commercial transportation services to more than 25,000 businesses worldwide seeking to transport cargo throughout the United States and elsewhere.  (Compl. ¶¶ 13-14).[2]  Plaintiff Landstar has been in business since 1988 and obtained a federal registration for the trademark "LANDSTAR" in 1990.  (Compl. ¶ 13, Exh. A).  Plaintiff Landstar also owns other marks, referred to as the Landstar "family" of marks, including "LANDSTAR INWAY," which it obtained a federal registration for in 2018.  (Compl. ¶¶ 15-16, Exh. A).[3]

Defendant Landstar Onway, Inc. ("Defendant Landstar" or "Defendant") is solely owned by Defendant Gkarnik Varntanian, is incorporated under the laws of the Commonwealth of Virginia, and purports to maintain its principal place of business in Alexandria, Virginia.  (Compl. ¶¶ 5, 8, 26).   Plaintiff Landstar and Defendant Landstar provide "substantially identical" commercial transportation services.  (Compl. ¶ 18).  There is no business affiliation between Plaintiff Landstar and Defendant Landstar.  (Compl. ¶ 27).  Plaintiff Landstar alleges that

---

on Defendant Varntanian (Dkt. 32) ("Suppl. Mem."); and all attachments and exhibits submitted with those filings.

[2] Plaintiff fails to specifically allege what type of commercial transportation services it provides. However, upon reviewing exhibits attached to the complaint it appears as though shippers contract with Plaintiff to identify and hire trucking companies, referred to herein as motor carriers, to transport the shippers goods between locations in the United States and elsewhere.  It further appears that the shippers pay Plaintiff, and Plaintiff is then responsible for paying the trucking companies it hires.

[3] Plaintiff alleges in Attachment A to its complaint that it filed an application for the Landstar Inway mark in 1998.  However, a review of the USPTO Trademark Status and Document Retrieval (TSDR) database reveals Plaintiff's application for the mark Landstar Inway (Reg. No. 5,558,435) was filed on April 6, 2017, and the federal registration was approved on September 11, 2018.  This discrepancy does not materially impact the undersigned's analysis herein.

Defendant Landstar infringed upon Plaintiff's marks and used deceptive business practices to fraudulently portray itself as Plaintiff to customers and potential customers.  (Compl. ¶¶ 32, 37, 42).  At the very least, Plaintiff contends that Defendants engaged in this conduct to falsely suggest an affiliation between Plaintiff Landstar and Defendant Landstar where none existed.  (Compl. ¶¶ 19-28, 32, 37, 42).  As a result, Plaintiff alleges it suffered a financial loss as well as damage to its reputation and goodwill and seeks actual and treble damages, recovery of Defendant's profits, costs and attorney's fees, as well as a permanent injunction.  (Compl. ¶ 2).

## II. <u>PROCEDURAL HISTORY</u>

Plaintiff Landstar filed its complaint on December 12, 2022, bringing five causes of action: (1) trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; (2) trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (4) Virginia common law trademark infringement; and (5) infringement in violation of Va. Code § 59.1-92.12.

As discussed *infra*, Plaintiff Landstar timely served process on Defendant Landstar.  (Dkt. 15).  Plaintiff then requested entry of default as to Defendant Landstar, and on March 8, 2023, the Clerk entered default as to Defendant Landstar.  (Dkt. 16-17).  On March 17, 2023, the Court ordered Plaintiff to "promptly" file a motion for default judgment as to Defendant Landstar and show cause why the suit should not be dismissed as to Defendant Varntanian under Federal Rule of Civil Procedure 4(m), which requires service of process within 90 days after the complaint is filed.  (Dkts. 20, 21).  As discussed *infra*, Plaintiff Landstar continued to attempt to serve process on Mr. Varntanian.  (Dkts. 12, 13, 22).  On March 22, 2023, Plaintiff moved for an extension of time to file a motion for default judgment as to Defendant Landstar in order to also include Mr.

Varntanian in the motion, which the Court granted the same day.  (Dkt. 24).  On April 8, 2023, Plaintiff Landstar requested entry of default as to Mr. Varntanian, and on April 12, 2023, the Clerk entered default as to Mr. Varntanian. (Dkts. 25-27).  On April 19, 2023, Plaintiff moved for default judgment as to both Defendants.  (Dkt. 28).

On May 26, 2023, the Court held a hearing of Plaintiff's Motion for Default Judgment, at which counsel for Plaintiff appeared but no representative of either Defendant appeared.  (Dkt. 30).  At the hearing the undersigned raised concerns about whether Mr. Varntanian was properly served with process in accordance with Federal Rule of Civil Procedure 4(e). (Dkts. 30, 31).  The undersigned permitted counsel for Plaintiff to file an amended affidavit from the process server and, if necessary, submit supplemental briefing on the issue.  (Dkts. 30, 31).  Plaintiff did not submit an amended affidavit from the process server, but on May 31, 2023, Plaintiff submitted a supplemental brief in which Plaintiff argued Mr. Varntanian was properly served with process. (Dkts. 31, 32).

### III.  JURISDICTION AND VENUE

The court must have both subject matter jurisdiction and personal jurisdiction over a defaulting party as well as venue over the claims before it can render a default judgment.

### A.  Subject Matter Jurisdiction

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the trademark claims raise a federal question.  Moreover, 28 U.S.C. § 1338 provides jurisdiction to federal district courts for civil actions under federal law relating to trademarks and copyrights. Finally, this Court has supplemental subject matter jurisdiction over Plaintiff's claims under Virginia common law and statutory law, pursuant to 28 U.S.C. § 1367(a), as the state law claims are "part of the same case or controversy" with the federal claims for which this Court has original

jurisdiction.

### B. Personal Jurisdiction

This Court has personal jurisdiction over Defendant Landstar, as Landstar is incorporated in Virginia and claims its principal place of business is in Alexandria, Virginia.  (Compl. ¶¶ 5, 11).[4]  Defendant Landstar represented to the Virginia State Corporation Commission that 1520 Belle View Boulevard, Number 5174, Alexandria, Virginia 22307-6530 was the company's principal place of business, was the location where Mr. Varntanian could be served with process and was also Mr. Varntanian's domicile.  (Compl. ¶¶ 5, 6, 9).  Plaintiff, however, states in its Motion for Default Judgment that when it attempted to serve Mr. Varntanian it discovered this address "was a mailbox store."  (Mot. Default J. at 3; *see also* Dkt. 6).  At minimum, Defendant Landstar is incorporated in Virginia, solicited business in Virginia, and held itself out to the public and the Virginia State Corporation Commission as having its principal place of business in the Commonwealth, specifically at a location within the Eastern District of Virginia.  (Compl. ¶¶ 6, 8, 9, 11).[5]  The undersigned recommends the Court find these facts taken as a whole demonstrate that Defendant Landstar is a resident of Virginia, permitting this Court to exercise personal jurisdiction over Defendant Landstar.  *See LG Electronics, Inc. v. Asustek Computers*, 126 F. Supp. 2d 414, 419 (E.D. Va. Dec. 22, 2000) ("[The defendant] is subject to [personal] jurisdiction in Virginia as a resident of Virginia because [the defendant] is incorporated in Virginia and has its principal place of business in [] Virginia.") (citations omitted).  Alternatively, the undersigned

---

[4] The undersigned notes that Exhibit E attached to Plaintiff's complaint purports to be an advertisement posted on-line by the Defendants, which lists a telephone number with a northern Virginia based area code but identifies Northridge, California as the company's headquarters.

[5] The undersigned takes judicial notice pursuant to Federal Rule of Evidence 201 of the fact that 1520 Belle View Boulevard, Number 5174, Alexandria, Virginia 22307-6530 is located within the Eastern District of Virginia.

recommends the Court find these facts taken as a whole demonstrate that Defendant Landstar had "continuous and systematic" contacts with Virginia to support this Court's *in personam* jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *see also PCS Phosphate Co., Inc. v. Norfolk Southern Corp.,* 520 F. Supp. 2d 705, 713 (E.D.N.C. Sept. 28, 2007) (finding the court had general personal jurisdiction over a defendant because the defendant "holds itself out" as engaged in business activity in the state and therefore "should have reasonably anticipated being haled into court in the state") (citations omitted).

Similarly, Mr. Varntanian, Defendant Landstar's sole owner and registered agent, clearly availed himself of the privilege of conducting business in Virginia by incorporating Defendant Landstar in the Commonwealth and listing with the State Corporation Commission the company's principal place of business and his domicile as Alexandria, Virginia. (Compl. ¶¶ 6, 8, 9, 11). Again, the undersigned recommends the Court find these facts establish sufficient contacts with Virginia for this Court to exercise personal jurisdiction over Mr. Varntanian. *See Helicopteros Nacionales de Colombia*, 466 U.S. at 416; *PCS Phosphate*, 520 F. Supp. 2d at 713.

### C. Venue

Finally, venue is proper in this District for the same reasons, because Defendant Landstar is incorporated in Virginia and held itself out as having its principal place of business in this District. A corporation properly registered with a state was a necessary prerequisite for Defendants to engage in the alleged infringing conduct. Therefore, the fact that Defendant Landstar was incorporated in Virginia and held itself out as being headquartered in Alexandria, Virginia, is sufficient to establish venue. In addition, Defendant Landstar allegedly solicited business throughout the country, including in this District, using Plaintiff's trademarks, and employing the deceptive practices alleged in the complaint. Therefore, the undersigned recommends the Court

find venue to be proper because a substantial part of the events or omissions giving rise to this suit occurred in this District.  (Compl. ¶ 12); *see* 28 U.S.C. § 1391(b).

## IV.  <u>SERVICE OF PROCESS</u>

The Court must also be satisfied that the defaulting parties have been properly served. Here, the undersigned recommends the Court find that Defendant Landstar was served through an agent authorized by law to receive service of process, but the record fails to reflect service of process upon Defendant Varntanian.

### A.  **Defendant Landstar**

Under Federal Rule of Civil Procedure 4(h), a corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B).  As noted above, Plaintiff attempted to serve Defendant Landstar through its registered agent at the address provided to the State Corporation Commission only to learn that the address "was a mailbox store."  (Mot. Default J. at 3; *see also* Dkt. 6).  Plaintiff then identified an alternative agent authorized by law to receive service of process on behalf of Defendant Landstar.

Defendant Landstar is licensed by the Federal Motor Carrier Safety Administration ("FMCSA") as an interstate property broker.  (Compl. ¶ 7).  As such, Defendant Landstar is required to file with the FMCSA a Form BOC-3 that identifies a corporate agent to receive service of process in every state in which Defendant Landstar conducts business.  49 C.F.R. § 366.1. Plaintiff reviewed Defendant Landstar's BOC-3 Form and identified Kenneth A. Olsen, Esquire

as Defendant Landstar's authorized agent in New Jersey.[6] (Mot. Default J. at 4).  Plaintiff has

provided a sworn affidavit of service, showing that on February 10, 2023, Plaintiff served the

summons and a copy of the complaint on Kenneth A. Olsen, Esquire, at 33 Philhower Road,

Lebanon, New Jersey.  (Dkt. 15).  Furthermore, the undersigned finds the regulations establishing

such an authorized agent do not require a mailing of copies.  (Mot. Default J. at 4); 49 C.F.R. §

366.1.  For these reasons the undersigned recommends the Court find Defendant Landstar has been

properly served.

**B. Defendant Gkarnik Varntanian**

Plaintiff's service of process on Defendant Varntanian, however, falls short because it was

untimely and because there is insufficient evidence to establish personal service.

**1. The Timeliness of Plaintiff's Attempted Service of Process**

Plaintiff Landstar filed its complaint on December 12, 2022.  (Dkt. 1).  Under Fed. R. Civ.

P. 4(m), service of process is required to be completed within 90 days of the filing of the complaint,

which in this case would fall on March 13, 2023.  Plaintiff made three timely attempts to personally

serve Defendant Varntanian, however Plaintiff acknowledges these three attempts failed.   (Dkts.

7, 12, 13).   Plaintiff relies exclusively on the fourth attempt to establish personal service, but the

fourth attempt occurred on March 15, 2023, two days after the March 13, 2023 deadline expired.

(Dkt. 22).

Fed. R. Civ. P. 4(m) states, in pertinent part, as follows:

> If a defendant is not served within 90 days after the complaint is filed, the court - on motion
> or on its own after notice to the plaintiff – must dismiss the action without prejudice against
> that defendant or order that service be made within a specified time. But if the plaintiff
> shows good cause for the failure, the court must extend the time for service for an
> appropriate period.

---

[6] The undersigned notes that New Jersey is where Plaintiff's private investigator and process server
is located.

On March 17, 2023, the Court provided notice to Plaintiff by ordering it to show cause why the suit should not be dismissed as to Defendant Varntanian under Federal Rule of Civil Procedure 4(m).  (Dkt. 21).  Rather than seek additional time to serve Mr. Varntanian, on March 22, 2023, Plaintiff simply moved for an extension of time to file a motion for default judgment as to Defendant Landstar in order to also include Defendant Vartanian in the motion.  (Dkts. 23, 24).  Plaintiff did not seek, nor was Plaintiff granted an extension of the 90 days to effect service of process.  If Plaintiff had sought to extend the 90-day period to effect service of process the undersigned may well have found good cause to do so.  But Plaintiff never requested this relief and it is not the proper role of the Court to *sua sponte* ensure a party's compliance with the Rules.

For these reasons the undersigned recommends the Court find Plaintiff's March 15, 2023 attempted service of Mr. Vartanian to be untimely.

### 2.  Plaintiff's Attempted Service Under Fed. R. Civ. P. 4(e)

After discovering that the Alexandria address Mr. Varntanian provided to the State Corporation Commission was a "mailbox store," Plaintiff hired a private investigator to locate and serve Mr. Varntanian.  (Mot. Default J. at 3).  The investigator determined that Mr. Varntanian "maintained his residence in California."  *Id.*  Plaintiff initially made two failed attempts to serve Mr. Varntanian at two different California addresses.  (Dkts. 12, 13).  However, Plaintiff claims to have successfully served Mr. Varntanian at a third address.  Plaintiff submitted a sworn affidavit of service by its process server, stating they were "provided with the results of a database search of public records indicating the last reported place of residence for Gkarnik Varntanian was reported as being at 6556 Saint Clair Ave., North Hollywood, CA 91606-1428."  (Dkt. 22).  The process server also states he was provided with information from Mr. Varntanian's driver's license record which "identified [him] as male, 5'8'' tall, 190 pounds with green eyes and black hair."  *Id.*

On March 15, 2023, the process server arrived at the address and observed two cars outside, neither of which were registered to Mr. Varntanian.  The process server observed a male already in the home, then observed a second male arrive in another car, which also was not registered to Mr. Varntanian.  *Id.*  The process server knocked on the door, and a "male fitting the description of the defendant" answered the door.  *Id.*  The process server asked for Gkarnik Varntanian, and the individual, who later identified himself as Garland, stated Mr. Varntanian no longer lived at this location.  The process server then employed a ruse and told Garland that he had a "package" to be delivered to Mr. Varntanian.   Garland walked back into the residence and a "few minutes later," returned and said Mr. Varntanian "does live at the location and that he could accept the package." The process server then provided the summons and copy of the complaint to Garland.  *Id.*

The process server states in their affidavit that the individual who identified himself as Garland "fit the physical description of the defendant" and that they "reasonably believed that the individual who received the documents may actually be the defendant."  (Dkt. 22).  The process server also provided a photo of Garland that he took during this interaction.  *Id.*  However, there is no photo in the record of Mr. Varntanian to compare.

Based on the process server's actions and stated conclusions, Plaintiff asserts it "was able to track down and serve Mr. Varntanian at his residence on March 15, 2023."  (Mot. Default J. at 4).  During the hearing of Plaintiff's Motion for Default Judgment, the undersigned raised concerns about the efficacy of this service and permitted Plaintiff to file an amended affidavit from the process server with additional information and submit a supplemental brief on the issue.  In its supplemental brief, Plaintiff stated:  (1) the process server "did not have any information to add to the declaration as filed"; and (2) "none of the subsequent mailings that have been sent to the address of service addressed to Gkarnik Varntanian have been returned."  (Suppl. Mem. at 1).

Federal Rule of Civil Procedure 4(e) governs personal service on an individual.   In pertinent part, the rule provides that an individual may be served by "delivering a copy of the summons and of the complaint to the individual personally" or by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(A),(B).[7]

Plaintiff asserts there is sufficient evidence from which the Court should find it personally served Mr. Varntanian in accordance with Fed. R. Civ. P. 4(e)(2)(A).  In short, Plaintiff argues the record reflects that Garland, the only individual personally served, was in fact Mr. Varntanian. The undersigned disagrees for the following reasons.

First, Plaintiff principally relies on the fact that Garland matched the general physical description (namely, height, weight, hair color and eye color) that Plaintiff alleges was derived from Mr. Varntanian's driver's license.  Plaintiff offers no facts or explanation as to how it acquired information from Mr. Varntanian's driving record, and therefore the Court has no way to evaluate the accuracy of the description.  Similarly, Plaintiff offers no facts or evidence as to when that description was provided to the licensing authority.  Since Plaintiff is relying on four physical characteristics to establish identity and knowing that weight and hair color can change over time, when that description was provided to the licensing authority would seem highly relevant.  Even if the undersigned were to assume the description accurately reflected the current appearance of Mr. Varntanian, the description is far too general to serve as the foundation for a reliable identification.  Even the process server could only conclude that Garland "*may* actually be the defendant."  (Dkt. 22) (emphasis added).

---

[7] Plaintiff puts forth no evidence or argument that it effected service in accordance with Fed. R. Civ. P. 4(e)(1) or 4(e)(2)(C).

Second, although the individual who identified himself as Garland made inconsistent statements as to whether Mr. Varntanian lived at the address, Garland never stated that he was Mr. Varntanian.   When the process server told Garland that he had a package for Mr. Varntanian, Garland did not immediately respond but rather went back into the house for a period of time before he returned and said that Mr. Varntanian did live at the residence and that Garland could accept the package on his behalf.  Again, this exchange does not advance Plaintiff's argument that Garland was in fact Mr. Varntanian.

Finally, there is only modest credible evidence that this was Mr. Varntanian's current residence.  Plaintiff alleges only that its process server was "provided with the results of a database search of public records indicating" this was "the last reported place of residence for Gkarnik Varntanian." (Dkt. 22).  There is no evidence as to who provided this information, what database was searched, who maintained the database or why that database is believed to be accurate.  The record does reflect that Plaintiff made two previous failed attempts to serve Mr. Varntanian at two different California addresses, which calls into question Plaintiff's claim that the third address was the correct address.  (Dkts. 12, 13).  In addition, none of the three vehicles at the residence were registered to Mr. Varntanian.  The undersigned can assign only modest weight to the inconsistent statements provided by Garland as to whether Mr. Varntanian lived at this residence.  Plaintiff's argument that mail addressed to Mr. Varntanian at this address has not been returned to Plaintiff as undeliverable has slight probative value but is far from dispositive.  As a result, the undersigned can only find there is some evidence in support of Plaintiff's argument that this was Mr. Varntanian's residence, however, there is insufficient evidence, considering all of the facts before the Court, to find that it was Mr. Varntanian who answered the door, identified himself as Garland and was served by Plaintiff's investigator.

Though Plaintiff has not made the argument, the undersigned also considered whether service was properly made pursuant to Fed. R. Civ. P. 4(e)(2)(B) by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there."  For the reasons stated above, the undersigned cannot find that Plaintiff has established by a preponderance of the evidence that the North Hollywood residence was Mr. Varntanian's "dwelling or usual place of abode."  Moreover, there is no evidence that Garland was a resident of the abode, rather than a guest, as required by Federal Rule of Civil Procedure 4(e)(2)(B).  Nor would service under this theory be proper pursuant to Virginia or California law.  Virginia permits service to be left with "a member of his family" who is not a "sojourner or guest," and California permits service to be left with "a competent member of the household."  Va. Code § 8.01-296; Cal. Code § 415.20.  Again, there is no evidence that Garland was a resident, family member, or member of the household.  Therefore, service was not proper under this theory either.

For these reasons the undersigned recommends the Court find that Plaintiff failed to establish by a preponderance of the evidence that Mr. Varntanian was served with process in accordance with Fed. R. Civ. P. 4(e).  As a result, the undersigned recommends the Court deny Plaintiff's Motion for Default Judgment as to Mr. Varntanian.

## V.  FINDINGS OF FACT

Upon a full review of the pleadings and the record in this case, the undersigned finds that Plaintiff has established the following facts.

### A.  Plaintiff and its Intellectual Property Rights

Plaintiff Landstar System, Inc. is a company that provides "interstate and international carriage services for hire."  (Compl. ¶ 3).  It owns the Landstar "family" of trademarks, including:

13

LANDSTAR, LANDSTAR INWAY, LANDSTAR CONNECT, LANDSTAR GLOBAL LOGISTICS, LANDSTAR EXPRESS AMERICA, LANDSTAR GEMINI, LANDSTAR LIGON, ROADSTAR LANDSTAR'S BEST and LANDSTAR RANGER (collectively referred to as the "Landstar Marks").  *Id.*  Plaintiff owns United States Patent and Trademark Office (the "USPTO") trademark registrations for each of the Landstar Marks.  (Compl. ¶ 16; *see id.* at Exh. A).  Plaintiff has been in business since 1988, providing services to more than 25,000 shippers, throughout the United States, as well as Canada, Mexico, and other countries.  (Compl. ¶¶ 13-14). Plaintiff began filing for trademark registrations in 1989 and obtained its registration for the Landstar mark in 1990, and all Landstar Marks were registered with the USPTO by 2018.[8] (Compl. Exh. A).  Plaintiff asserts it has used the Landstar name and trademarks on a "longstanding and prominent" basis, thereby creating  "significant fame" and establishing goodwill in the Landstar Marks.  (Compl. ¶ 15).

## B.  The Defendants' Alleged Use of the Landstar Marks

Plaintiff Landstar alleges that the Defendant Landstar is a separate and unaffiliated company that provides "interstate property brokerage services." (Compl. ¶ 18).  Plaintiff Landstar further alleges that Defendant Landstar offers services that are "substantially identical" to Plaintiff's services, while operating under a name that is "confusingly similar to the Landstar Marks."  (Compl. ¶ 19).

Defendant Varntanian is the incorporator and sole stockholder of Defendant Landstar and owns and controls the company.  (Compl. ¶¶ 25-26).  Furthermore, Plaintiff alleges that the Defendants have used the Landstar Marks to engage in a "bad faith effort to improperly suggest an affiliation" between Plaintiff Landstar and Defendant Landstar "where none exists."  (Compl.

---

[8] As noted earlier, the Landstar Inway mark was registered in 2018.

¶ 21).  Plaintiff alleges Defendants created documents that appear identical or substantially similar to Plaintiff's documentation for arranging transportation of cargo.  (Compl. ¶ 27).  Plaintiff claims these efforts by Defendants were intended to deceive customers and potential customers into falsely believing they were engaging Plaintiff, and to unlawfully profit by trading on the professional reputation that Plaintiff established in the industry.  (Compl. ¶ 28).

Plaintiff alleges four examples occurring in October and November of 2022, in which the Defendants deceived or attempted to deceive customers into believing they were communicating with Plaintiff when in fact they were engaging the Defendants.  In the first, Plaintiff alleges that a motor carrier, JJ&L Transportation, LLC, agreed with Defendants to arrange a shipment of cargo.  Defendants issued a "fraudulent load confirmation" to the motor carrier that "look[ed] almost identical to documentation issued by Plaintiff."[9]  The motor carrier ultimately sought payment from Plaintiff demonstrating that it believed it had entered into a contract with Plaintiff and not the Defendants.  (Compl. ¶¶ 29-32).  Second, Plaintiff alleges another motor carrier, Expo Trucking, LLC, reported that its employee corresponded with the Defendants at the e-mail address lukelandstaronway@gmail.com to arrange a shipment of cargo.  The motor carrier employee received rate confirmation documentation from lukelandstaronway@gmail.com that was "virtually identical to documentation issued by Plaintiff."[10]  The motor carrier employee reasonably believed they were communicating with Plaintiff but "[a]t the last moment" noticed that the paperwork appeared "suspicious" and was "not from Plaintiff."  (Compl. ¶¶ 33-37).  Third, Plaintiff alleges another motor carrier, GMS Transportation, Inc., reported a very similar incident as that experienced by Expo Trucking, LLC, including documents to arrange a cargo shipment that

---

[9] Plaintiff provides a copy of the load confirmation document at Exhibit B of the complaint.

[10] Plaintiff provides a copy of the load confirmation document at Exhibit C of the complaint.

were "almost identical to documentation issued by Plaintiff." (Compl. ¶¶ 38-42). Finally, in the last example, Plaintiff alleges that one its agents discovered a "fake" advertisement posted by the Defendants on a website called 'truckstop.com' under the name *Landstar Onway*."[11] (Compl. ¶¶ 43-45).

Plaintiff next alleges that, based upon these reports of fraudulent activity that it received, on October 19, 2022, Plaintiff's counsel wrote a letter to Defendants demanding they cease use of the Landstar name. (Compl. ¶ 47). Counsel confirmed the letter was received by Defendants. (Compl. ¶ 48). On October 25, 2022, and November 14, 2022, counsel for Plaintiff sent second and third cease-and-desist letters to Defendants. (Compl. ¶ 49, 51). Defendants did not respond to any of the letters. Plaintiff alleges that Defendants continued to fraudulently use the Landstar Marks in violation of the Lanham Act as well as Virginia statutory and common law. (Compl. ¶¶ 50, 53).

### C. Liability of Defendant Varntanian

As noted above, the undersigned recommends the Court deny the Motion for Default Judgment as to Defendant Varntanian due to untimely and improper service of process. However, if the Court deems service of process sufficient, the Court must then determine whether Defendant Varntanian, an individual, may be held liable for Plaintiff's claims based upon actions of the corporate entity.

It is well established that "[t]he law of the state in which an entity is incorporated generally governs the question whether a court may pierce an entity's veil." *Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 387 (4th Cir. 2018) (citing *First Nat'l City Bank v. Banco Para El Comercio*

---

[11] Plaintiff provides a copy of the advertisement at Exhibit E of the complaint.

*Exterior de Cuba*, 462 U.S. 611, 621 (1983)).  Accordingly, the undersigned applies the law of Virginia.  (*See* Compl. ¶ 5).

While a corporate entity is generally recognized as a being, limiting liability for investors and officers, "[t]he corporate structure is not [] a shield for dominant shareholders to hide behind while defrauding or injuring creditors, or conducting illegal operations."  *West v. Costen*, 558 F.Supp. 564, 585 (W.D. Va. Mar. 2, 1983).  Therefore, "when substantial ownership of all the stock of a corporation in a single individual is combined with other factors clearly supporting disregard of the corporate fiction on grounds of fundamental equity and fairness … the corporate entity will be disregarded and liability fastened on the individual shareholder."  *Id.* (internal quotation mark and citations omitted).

Here, Plaintiff alleges that Defendant Varntanian is the sole shareholder of Defendant Landstar and owns, controls, and acts as principal and director of the company.  (Compl. ¶¶ 8, 25, 26).  Plaintiff further alleges that Mr. Varntanian owns and controls the e-mail addresses used to conduct business on behalf of Defendant Landstar.  (Compl. ¶¶ 23, 24; *see, e.g.*, *id.* ¶ 39).  Finally, Plaintiff alleges that Defendant Landstar, through Defendant Varntanian, has engaged in bad faith efforts to mislead and defraud the public and specifically motor carriers.  (Compl. ¶¶ 18-28).

These allegations, when considered together and taken as true for the purposes of Plaintiff's Motion, support a finding that Defendant Varntanian was the principal architect and operative of the alleged misconduct.  Therefore, the undersigned recommends that – if the Court deems service of process on Defendant Varntanian to be sufficient – the Court find that principles of equity and fairness support piercing the corporate veil to attach personal liability to Defendant Varntanian.

## VI. <u>EVALUATION OF PLAINTIFF'S COMPLAINT</u>

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the

plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). Before entering default judgment, however, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).

The undersigned will accordingly consider Plaintiff's motion for default judgment as to its claims against Defendants of: (1) trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; (2) trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (4) Virginia common law trademark infringement; and (5) infringement in violation of Va. Code § 59.1-92.12.

The facts alleged in Plaintiff's complaint, deemed admitted for the purposes of this Motion, support the recommendation by the undersigned that the Court grant Plaintiff's Motion for Default Judgment as to all causes.

**A.  The Lanham Act Claims**

The Lanham Act prohibits the use of a colorable imitation of a registered mark in connection with the distribution of goods and services where such use is likely to cause confusion or to deceive. 15 U.S.C. § 1114(1). Plaintiff's first three claims allege trademark infringement and unfair competition in violation of the Lanham Act. It is well established that each of these claims incorporate "essentially the same . . . elements." *Automobili Lamborghini S.p.A. v. Garcia*, 467 F. Supp. 3d 385, 404 (E.D. Va. June 16, 2020) (citing *Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005)); *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992)

(Stevens, J., concurring) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical – is there a likelihood of confusion?") (internal citation and quotation marks omitted).

In order to prevail on claims of trademark infringement and unfair competition under the Lanham Act, Plaintiff Landstar must first establish that it had a valid, protectable trademark. *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006). In its complaint and the attachments thereto, Plaintiff has properly alleged and clearly established that it has valid trademarks that are protectable. Plaintiff has used the Landstar Marks since it began business in 1988 and has registered the Landstar Marks with the USPTO, beginning in 1990 and completing registration of all the Marks by 2018. (Compl. ¶¶ 15-17, Exh. A).

Next, Plaintiff Landstar must demonstrate that the Defendants' "use of a colorable imitation of the trademark is likely to cause confusion among consumers." *Id*. Likelihood of confusion exists if the Defendants' "actual practice is likely to produce confusion in the minds of consumers about the origin of the good or service in question." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004). The Fourth Circuit has identified nine factors for the Court to consider in determining the likelihood of confusion. *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009) (first citing *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984); and then citing *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463-64 (4th Cir. 1996)). "Not all of these factors are of equal importance, 'nor are they always relevant in any given case.'" *Id.* (quoting *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 320 (4th Cir. 1992)). The factors are: (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of

the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion;  (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.  As discussed in greater detail below, the parties' marks share an identical and arbitrary dominant word, and the parties compete in the same niche industry. These facts alone strongly suggest the likelihood of confusion to the consumer as to which company is associated with the Landstar mark.  See *Dewberry Engineers Inc. v. Dewberry Group, Inc.*, Nos. 22-1622, 22-1845, 2023 WL 5062022, at *8-14 (4th Cir. Aug. 9, 2023), *Pizzeria Uno Corp*, 747 F.2d at 1530.

### 1. The Strength or Distinctiveness of Plaintiff's Marks

The strength or distinctiveness of the mark is "the degree to which a consumer in the relevant population, upon encountering the mark, would associate the mark with a unique source." *Carefirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 269 (4th Cir. 2006).  The "strength" of the trademark is evaluated in terms of its conceptual strength and commercial strength.  *Id.*

Measuring a mark's "conceptual strength or inherent strength focuses on the linguistic or graphical 'peculiarity' of the mark, considered in relation to the product, service or collective organization to which the mark attaches."  *See Swatch, S.A. v. Beehive Wholesale, L.L.C.*, 888 F. Supp. 2d 738, 747 E.D. Va. 2012); *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990).   To guide the Court's analysis, the Fourth Circuit classifies marks as (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful.  *See Pizzeria Uno Corp.*, 747 F.2d at 1527, *Swatch, S.A.*, 888 F. Supp. 2d. at 748.  Under this "hierarchy of distinction," generic marks receive no protection, descriptive marks require proof of a secondary meaning to be eligible for protection, while suggestive and arbitrary or fanciful marks are inherently distinctive.  *See Sara Lee*, 81 F.3d at 464.  Here, Plaintiff's Landstar brand is linguistically unique and therefore conceptually distinct.

There is nothing about the term "Landstar" that could be fairly considered generic or descriptive in the context of commercial transportation services. Quite the contrary, the term is an arbitrary and fanciful description of Plaintiff's business, meaning Plaintiff's Marks are inherently distinctive under the Fourth Circuit's classification process.

By contrast, the commercial strength inquiry looks to the marketplace and asks, "if in fact a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise." *Perini Corp.,* 915 F.2d at 124; *Swatch, S.A.*, 888 F. Supp. 2d. at 748 (quoting *Food Fair Stores, Inc. v. Lakeland Grocery Corp.*, 301 F.2d 156, 160-61 (4th Cir 1962)). The record reflects that Plaintiff's Marks are well known within the commercial transportation industry. The Landstar Marks have been used by Plaintiff on a "longstanding" and "prominent" basis, going back to the inception of Plaintiff's business in 1988. (Compl. ¶ 15). The Marks are widely known, as Plaintiff's business has served more than 25,000 shippers worldwide. (Compl. ¶ 14). Therefore, it is reasonable to conclude that the Landstar Marks are associated specifically with Plaintiff's business. Moreover, in its complaint Plaintiff alleges three instances in which present or prospective customers believed they were engaging Plaintiff Landstar only to later learn they were actually communicating with Defendant Landstar. (Compl. ¶¶ 29-42). These three instances highlight the commercial strength of Plaintiff's Marks.

For these reasons, the undersigned finds Plaintiff's Marks to be exceptionally strong and highly distinctive.

## 2. The Similarity of the Two Marks to Consumers

In assessing the similarity of the marks under the second factor, Courts examine the "allegedly infringing use in the context in which it is seen by the ordinary consumer." *Anheuser-*

*Busch, Inc,* 962 F.2d at 320.  Here, the marks are confusingly similar.  The Defendant's company name fully incorporates the term "Landstar" which is the foundational term for all of Plaintiff's Marks.  In addition, the Defendant's full corporate name, Landstar Onway, Inc., differs by only one letter from Plaintiff's Mark "Landstar Inway."  Therefore, in this context Defendant Landstar's use of Plaintiff's Marks would likely cause the ordinary consumer within the commercial transportation industry to confuse Defendant Landstar with Plaintiff Landstar.

### 3.  The Similarity of the Goods or Services that the Marks Identify

Plaintiff Landstar and Defendant Landstar provide "substantially identical" commercial transportation services.  (Compl. ¶ 18).  Therefore, the parties are competing to provide the same services to the same customer base.  This significantly increases the likelihood of confusion within the industry as well as the potential reputational harm suffered by Plaintiff.

### 4.  The Similarity of the Facilities Used by the Markholders

This factor addresses the way in which the parties provide their respective services.  *CareFirst*, 434 F.3d at 273.  Here, both parties provide the same commercial transportation services to interstate motor carriers.  This is a specific service performed for a defined customer base.  There is nothing in the record to suggest the parties provide this service in a materially different manner from one another.

### 5.  The Similarity of Advertising Used by the Markholders

There is nothing in the record that addresses the similarity of advertising used by the markholders.  However, Plaintiff does allege that Defendants published a "fake" advertisement under the name "Landstar Onway Inc" on a website called "truckstop.com." (Compl. ¶ 44).  There is nothing in the record that establishes that Defendant Landstar does not actually provide transportation services, therefore there is no basis to find the advertisement to be "fake" as opposed

to misleading.  The advertisement does, however, support Plaintiff's claims that the Defendants provide essentially the same transportation services and target the same customer base, and in doing so infringe upon Plaintiff's Landstar Marks.

### 6.  The Defendant's Intent

Plaintiff has alleged that Defendants acted in "bad faith" and with intent to "defraud and deceive motor carriers."  (Compl. ¶¶ 21, 28).  The undersigned finds these claims are supported by factual allegations in the complaint and the reasonable inferences drawn from those allegations. The word "Landstar" is the central term in all of Plaintiff's Marks.  Landstar is the shorthand name associated with Plaintiff's commercial transportation business for over 20 years.  Landstar is a linguistically distinctive name.  So when Defendants opened a rival business and selected a confusingly similar name, the only reasonable inference is that they did so in bad faith and with a premeditated intent to trade upon the professional reputation of Plaintiff and deceive customers into believing Defendant Landstar was actually Plaintiff Landstar.  This finding is further supported by the allegation that Defendant used documents that were "virtually identical to documentation issued by Plaintiff," and at times Defendant just identified itself as "Landstar" on its corporate documents and communications.  (*See* Compl. ¶¶ 29-42, Exhs. B, C, D).

### 7.  Actual Confusion

Plaintiff has alleged actual confusion by three separate motor carriers that believed they were engaging with Plaintiff Landstar, not Defendant Landstar.  (*See* Compl. ¶¶ 29-42, 46, Exhs. B, C, D).  In one instance, Plaintiff alleges that it became aware of the confusion when a motor carrier sought payment from Plaintiff for a contract presumably entered with Defendant.  (Compl. ¶ 31).  The two remaining examples cited by Plaintiff indicate that the motor carriers discovered during the initial negotiations that they were communicating with Defendant and not Plaintiff, and

therefore no contracts were signed, nor were any services provided by the motor carriers.  (Compl. ¶¶ 33-42).

### 8.  The Quality of the Defendant's Product

The record is mostly devoid of any allegations regarding the quality of Defendant's services.  It is unclear whether Plaintiff is alleging that Defendant is an entirely fraudulent enterprise stealing customers money and providing no services in return, or whether Plaintiff is solely alleging that Defendant tricks customers into hiring them and then generally performs the services as agreed.  Plaintiff identifies only one instance in its complaint in which the Defendant arranged for the transportation of goods by a motor carrier but then failed to pay the motor carrier. (Compl. ¶¶ 29-32).[12]  Plaintiff seems to suggest this failure to pay demonstrates Defendant's business was entirely fraudulent.  But this allegation, standing alone, is insufficient for the undersigned to make a finding as to whether the Defendant performed any actual work or as to the overall quality of the Defendant's work.  There is no properly pled allegation in the record that Defendant Landstar did not typically arrange for the transportation of goods in a manner similar to Plaintiff.  Moreover, one pay dispute with a single motor carrier does not permit a sweeping inference that Defendant Landstar never provided any legitimate services.

### 9.  The Sophistication of the Consuming Public

The final factor, the sophistication of the consuming public, is not particularly relevant to this case.  The record demonstrates that Defendants created a competing company with a confusingly similar name to deceive the consuming public and to trade on Plaintiff's established reputation.  The steps taken by Defendants were calculated to mislead all consumers regardless of

---

[12] In its Motion for Default Judgement, Plaintiff alleges it settled with two motor carriers for payments not made by Defendant. (*See* Brown Decl. ¶¶ 13-15, 17).

their level of sophistication.

For these reasons, the undersigned finds that the well-pleaded allegations of facts set forth in the plaintiff's complaint establish that Defendants' use of the Landstar Marks is likely to cause confusion among consumers. The undersigned further finds that Plaintiff has satisfied each element of trademark infringement and unfair competition under the Lanham Act, and recommends the Court grant default judgment against Defendant Landstar with respect to these claims.

### B. Virginia Common Law and Statutory Claims

Plaintiff's fourth cause of action alleges unfair competition under Virginia common law. This claim, like the federal unfair competition claim, does not require a separate analysis, as the test is "essentially the same" as for trademark infringement under the Lanham Act, and courts typically analyze such claims concurrently. *Synergistic Intern., LLC*, 470 F.3d at 170, n.9 (4th Cir. 2006) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995)). The undersigned applied the allegations in the complaint to the elements of trademark infringement under the Lanham Act *supra*, finding Plaintiff had satisfied each element of the trademark infringement claim. Applying the same analysis here, the undersigned finds that Plaintiff has sufficiently pleaded a valid, protectable trademark and a likelihood of confusion among consumers, and therefore recommends the Court grant default judgment against Defendant Landstar on the unfair competition claim under Virginia common law.

Plaintiff's fifth and final cause of action alleges infringement under Virginia Code § 59.1-92.12. This provision creates liability for using a registered trademark, without consent of the owner, in a manner likely to cause consumer confusion, for purposes of selling or advertising goods or services. The undersigned again refers to the previous analysis, which found that Plaintiff

validly owns and has registered the Landstar Marks and that Defendants' knowingly used the Landstar Marks without Plaintiff's consent in a way likely to confuse consumers and for the purpose of selling and advertising Defendants' transportation services.  For these reasons, the undersigned recommends the Court grant default judgment on the claim of infringement under the Virginia Code § 59.1-92.12 against Defendant Landstar.

## VII.  <u>REQUESTED RELIEF</u>

Under the Lanham Act, Plaintiff seeks the following relief against Defendants: (1) recovery of Defendants' profits; (2) actual damages; (3) recovery for reputational harm; (4) treble damages; (5) attorney's fees and costs; and (6) a permanent injunction to enjoin Defendants' from using any of the Landstar Marks, including Landstar and Landstar Onway. (Compl. Prayer for Relief; Mem. Supp. at 5-9).[13]

### A.  Recovery of Defendant's Profits

Under the Lanham Act, where a trademark infringement violation has been established under Section 1125(a), the plaintiff is entitled to recover the defendant's profits.  15 U.S.C. § 1117(a). It is the Court's role to "assess" a defendant's profits with respect to a plaintiff's recovery under the Lanham Act.  15 U.S.C. § 1117(a).  "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.*  "The trial court's primary function is to make violations of the Lanham Act unprofitable to the infringing party." *Mya Saray, LLC v. Al-Amir*, 831 F. Supp. 2d 922, 941 (E.D. Va. Nov. 22, 2011) (quoting *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 941 (7th Cir. 1989)).

Gloria Brown, the former Director, Security & Cargo Loss Prevention of Landstar

---

[13] Plaintiff does not seek any additional relief under Virginia common law or under Virginia Code § 59.1-92.13.

Transportation Logistics, Inc., a subsidiary of Plaintiff Landstar System, declared within her sworn statement that Plaintiff's "accounting department has identified twenty-one (21) fraudulent load cases associated with Onway," for which the "freight charges … total $99,800 which is a general representation of the profits that Onway was making by issuing false transportation documentation using Landstar's name." (Brown Decl. ¶ 20).  Stated differently, in these 21 instances, Defendants "deceived [motor carriers] into performing transportation services for Onway."  (Mem. Supp. at 7).  Therefore, Plaintiff has reasonably demonstrated that Defendants have profited from their infringement in the amount of $99,800.00.

## B. Actual Damages

Under the Lanham Act, where a trademark infringement violation has been established under Section 1125(a), the plaintiff is also entitled to recover any damages sustained by the plaintiff.  15 U.S.C. § 1117(a).   Here again, it is the Court's role to "assess" damages sustained by a plaintiff with respect to a plaintiff's recovery under the Lanham Act.  15 U.S.C. § 1117(a).  While a plaintiff need not prove damages "with exacting specificity," the plaintiff nonetheless bears the burden of proving actual damages.  *PBM Products, Inc. v. Mead Johnson & Co.*, 174 F. Supp. 2d 424, 430 (E.D. Va. Oct. 25, 2001) (citations omitted).

Plaintiff alleges that because of the confusion intentionally created by Defendants' use of Plaintiff's Marks, several motor carriers entered into transportation contracts with Defendants. Even though Plaintiff was not a party to these agreements, some of the motor carriers nevertheless sought payment from Plaintiff.  (*See* Brown Decl. ¶¶ 13-15, 17).  Plaintiff states it paid two motor carriers a total of $11,945.00 "to resolve" these "demands."  (*Id.* ¶ 17).  Regardless of whether Plaintiff was legally obligated to pay the two motor carriers, these payments are directly attributable to the Defendants' infringing conduct and therefore are properly recoverable by

Plaintiff.

In addition, Plaintiff claims it paid the law firm of Clark Hill, LLP the amount of $9,290.00. (*See* Brown Decl. ¶ 24).  It appears as though Clark Hill, LLP represented one of the motor carriers and Plaintiff paid its attorney's fees as part of a settlement.  Here again, the undersigned finds this payment to be directly attributable to the Defendants' infringing conduct and is therefore properly recoverable by Plaintiff.[14]  Plaintiff also alleges it was engaged in additional litigation to resolve similar disputes caused by the Defendants' conduct but has provided no evidence regarding the actual damages sustained or expenses incurred as a result of this litigation.

Therefore, Plaintiff has reasonably demonstrated it has suffered actual damages in the amount of $11,945.00, the costs of settling two claims, and $9,290.00, the cost of paying a motor carrier's attorney's fees, totaling $21,235.00.

### C. Reputational Harm

Plaintiff also alleges it suffered reputational harm and asks the Court to award $500,000 in damages.   Plaintiff claims that the amounts it is paying directly to defrauded customers "do not adequately address Landstar's true losses in reputation and good standing in the transportation community." (Brown Decl. ¶ 17).  Plaintiff does not, however, explain in what way its professional reputation has suffered.  But even assuming there has been some measurable damage to Plaintiff's reputation, Plaintiff has failed to explain how it calculated its $500,000 demand, or how the Court should quantify its alleged reputational harm.   "[T]he extent of money damages … must have evidentiary support."  *Pharmanetics, Inc. v. Aventis Pharm., Inc.*, 182 Fed. Appx. 267, 273 (4th Cir. 2006) (citation omitted).  Without an "evidentiary basis on which to rest such an award," the

---

[14] Plaintiff seeks recovery of the payment to Clark Hill LLP as attorney's fees. (*See* Mot. Default J. at 4; Brown Decl. ¶ 24).  But given that the fees were paid as part of a settlement in a collateral civil action, the undersigned finds they are properly considered damages.

court will not grant it.  *Id.* (quoting *PPX Enters., Inc. v. Audiofidelity Enters., Inc.*, 818 F.2d 266, 271–73 (2d Cir. 1987)).   The undersigned finds that Plaintiff has not provided sufficient evidentiary support for this claim and has failed to meet its burden.  Therefore, the undersigned recommends the Court deny Plaintiff's request for damages based on reputational harm.

### D.  Treble Damages

The Lanham Act also provides for treble damages for violations of Section 1114(1)(a) involving "use of a counterfeit mark or designation," if the violation consists of intentionally using a mark or designation, knowing it is counterfeit, for the sale of goods or services.  15 U.S.C. § 1117(b).  A counterfeit mark is defined as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.  "Generally, district courts have exercised their authority [pursuant to 15 U.S.C. § 1117] to treble the damages award and increase the profits award to a trebled amount in cases involving intentional, knowing, deliberate, or willful infringement."  *Djarum v. Dhanraj Imports, Inc.*, 876 F. Supp. 2d 664, 671 (W.D.N.C. Mar. 14, 2012) (citation omitted).

Here, Plaintiff has plausibly alleged that Defendants used a counterfeit mark and acted in bad faith, with an intent to deceive and defraud the public and specifically motor carriers who are the customers of Plaintiff.  (Compl. ¶¶ 21, 27, 28).  As noted above, the parties' marks are identical or substantially indistinguishable.  Moreover, the allegations of bad faith are supported by indicia of intentional infringement, such as Defendants' use of the distinctive "Landstar" name and logo and Defendants' failure to pay motor carriers after the fact.  (Compl. ¶¶ 29-32, Exhs. B, C, D). Equally compelling is the allegation that Plaintiff contacted Defendants on multiple occasions to cease and desist, and Defendants never responded but rather continued to use the Landstar Marks in the same manner.  (Compl. ¶¶ 47-53).

Therefore, the undersigned finds that Plaintiff has plausibly alleged that Defendants' infringement of its Marks was intentional, and Plaintiff is entitled to treble damages. The undersigned recommends $99,800.00, which constitutes proven profits to the Defendants, be trebled to a total of $299,400. Such an award is consistent with the intent of the statute and the facts of this case. However, the undersigned does not recommend the Court treble Plaintiff's payments to settle claims made by motor carriers or payments to law firms representing motor carriers. The undersigned finds awarding Plaintiff their actual litigation expenses is appropriate, but to treble these damages would constitute a financial windfall to Plaintiff.

### E.  Attorney's Fees and Costs

Next, Plaintiff seeks attorney's fees and costs from Defendants. (Compl. Prayer for Relief). While costs are awarded as a matter of course for a violation of the Lanham Act, the Court may award attorney's fees to the prevailing party only "in exceptional cases." 15 U.S.C. § 1117(a). Determination of whether the "exceptional" standard has been met "is in the sole discretion of the Court." *Agri-Supply Co., Inc. v. Agrisupply.Com*, 457 F. Supp. 2d 660, 666 (E.D. Va. Sept. 13, 2006) (citing *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 108 n. 6 (4th Cir. 1991)). While there is no definition within the statute, the Fourth Circuit has interpreted "exceptional cases" to be those where "the defendant's conduct was malicious, fraudulent, willful or deliberate in nature." *Retail Services, Inc. v. Freebies Publishing*, 364 F.3d 535, 550 (4th Cir. 2004) (citation omitted).

Plaintiff argues that this is an "exceptional case" for multiple reasons. First, Plaintiff contacted Defendants to give notice of their infringing activity and to demand they cease and desist, but Defendants refused to respond and continued to use Plaintiff's Marks in the same manner. (Mem. Supp. at 8). This conduct, in addition to Defendant Landstar's failure to appear

in this action despite proper service, is indeed evidence of a willful and deliberate infringement. *See Agri-Supply*, 457 F. Supp. 2d at 667 ("Willful defiance of the judicial process lends sufficient grounds for finding that an exceptional case under § 1117(a) exists.") (citation omitted). Second, Plaintiff argues that Defendants perpetrated a scheme to defraud the public and specifically, motor carriers, by issuing fraudulent documentation bearing Landstar's name and logo. (Mem. Supp. at 8). Again, the undersigned previously acknowledged this fact in analyzing the likelihood of confusion and considering treble damages and agrees once more that these allegations plausibly demonstrate an intentional and fraudulent scheme to infringe upon Plaintiff's Marks. Therefore, the undersigned finds this to be an exceptional case entitling Plaintiff to a recovery for reasonable attorney's fees.

Plaintiff has only provided lump sum amounts of fees paid to its attorneys. Specifically, Plaintiff alleges it paid the law firm of Davis and Gilbert, LLP a total of $11,467.50 and its Virginia counsel a total of $10,209.20. (*See* Brown Decl. ¶¶ 22-25). Similarly, Plaintiff has simply stated it "has spent $3,279.24 on investigative and process server costs." *Id.* Typically, in order to conduct a proper evaluation of Plaintiff's fees and costs, the undersigned will require Plaintiff to state with particularity in an affidavit the costs, attorneys' hours worked, the billing rates of the attorneys involved, and why the rates, fees and costs are reasonable. *See Dewberry Engineers, Inc. v. Dewberry Grp., Inc.*, No. 1:20-cv-00610, 2022 WL 1439826, at *14 (E.D. Va. Mar. 2, 2022). Here, Plaintiff has failed to do so. However, given that the total attorney's fees requested is $21,706.02, and the total in costs requested is $3,279.24, the undersigned finds these amounts are reasonable on their face given the nature of the case and the investigation undertaken by counsel.

### F. Permanent Injunction

The Lanham Act empowers courts "to grant injunctions, according to principles of equity and upon such terms as the court may deem reasonable, to prevent" trademark infringement. 15 U.S.C. § 1116(a).  In fact, the Fourth Circuit has held that an injunction is "the preferred remedy" for such infringement.  *Dewberry Engineers Inc.,* Nos. 22-1622, 22-1845, 2023 WL 5062022, at *14 (4th Cir. Aug. 9, 2023), quoting *Lonestar Steakhouse*, 43 F.3d at 939.   Specifically, Plaintiff seeks the entry of a permanent injunction against Defendants enjoining them from "further use of the name *Landstar Onway or Landstar* or any names or marks confusingly similar thereto and any trademarks owned by Plaintiff and any of its affiliated entities."  (Compl. Prayer for Relief).

To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:

(1) that it has suffered an irreparable injury;
(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
(4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

The undersigned recommends that a permanent injunction as requested by Plaintiff is appropriate.  All four elements of the Fourth Circuit test for a permanent injunction are satisfied.  First, Plaintiff suffered and continues to suffer irreparable financial injury and reputational harm due to the Defendants' infringing conduct.  As noted herein, the record clearly establishes that Defendants have infringed Plaintiff's Marks by creating confusion in the marketplace and deceiving customers into believing that Defendant Landstar is actually Plaintiff Landstar.  Indeed, the Fourth Circuit has held that with respect to trademark infringement, "[a] finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears."

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 938 (4th Cir. 1995) (citation omitted).

Second, other remedies available at law are inadequate to compensate Plaintiff.  As other courts have noted, a defendant's resfusal to respond to cease and desist requests "signals a threat of continued infringement." *Entrepreneur Media,* 958 F. Supp. 2d at 596 (citation omitted).  Here, Defendants have not only refused to respond to any of Plaintiff's three separate cease and desist letters, but Plaintiff alleges that the infringement continued beyond those communications. (Compl. ¶¶ 47-53). Further, when Plaintiff brought this civil action, Defendant Landstar again failed to appear after being properly served with process.  These circumstances demonstrate a substantial threat of continued violations unless the Court acts to enjoin Defendants' conduct.

Third, the only hardship that would befall Defendants by granting Plaintiff's requested permanent injunction would be the requirement to follow established trademark law.  Therefore, the balance of hardships weighs soundly in Plaintiff's favor.

Fourth, public interest favors an injunction. An injunction would prevent continued consumer confusion and the resulting financial harm and disruption of this segment of the commercial transportation industry.

Finally, the undersigned recommends granting a permanent injunction that protects all of Plaintiff's Marks.  It is well-settled that "injunctive relief must not extend beyond the threatened injury." *Dewberry Engineers Inc*, Nos. 22-1622, 22-1845, 2023 WL 5062022, at *14 (4th Cir. Aug. 9, 2023), quoting *Catalog Mktg. Servs., Ltd. V. Savitch*, 873 F.2d 1438 (4th Cir. 1989) (unpublished table opinion).  Here, the record indicates that Defendants have misappropriated only the Landstar mark and the Landstar Inway mark.  But all the Landstar Marks include the word the foundational word "Landstar," and to draw the injunction more narrowly would encourage

Defendants to again incorporate a business with a confusingly similar Landstar name.

Therefore, the undersigned recommends that the Court grant Plaintiff's request for injunctive relief.

## VIII.  **RECOMMENDATION**

For the reasons outlined above, the undersigned United States Magistrate Judge recommends that Plaintiff's Motion for Default Judgment be GRANTED IN PART and DENIED IN PART.  Specifically, the undersigned

RECOMMENDS the Court GRANT default judgment as to Defendant Landstar Onway, Inc. on all Counts.; and further

RECOMMENDS the Court DENY default judgment as to Defendant Gkarnik Varntanian, individually, on all Counts, due to insufficient service of process; and further

RECOMMENDS that pursuant to Fed. R. Civ. P. 4(m) the Court dismiss without prejudice the case against Defendant Gkarnik Varntanian; and further

RECOMMENDS the Court GRANT Plaintiff's request for damages against Defendant Landstar Onway, Inc., constituting profits to the Defendant Landstar Onway, Inc., in the amount of $99,800.00, trebled to a total of $299,400; and further

RECOMMENDS the Court GRANT Plaintiff's request for actual damages against Defendant Landstar Onway, Inc. in the amount of $21,235.00; and further

RECOMMENDS the Court DENY Plaintiff's claims for damages based on reputational harm; and further

RECOMMENDS the Court GRANT Plaintiff's request for attorney's fees and costs and award Plaintiff $21,706.02 in attorney's fees and $3,279.24 in costs, totaling $24,985.26; and further

RECOMMENDS the Court GRANT Plaintiff permanent injunctive relief against Defendant Landstar Onway, Inc., enjoining Landstar Onway, Inc., including any of its officers, agents, employees, representatives, successors, assigns, and all persons, firms, corporations or entities acting directly with or under its control, from further use of any of the Landstar Marks, including the names "Landstar Onway" or "Landstar," or any names or marks confusingly similar thereto.

## IV.  <u>NOTICE</u>

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service.  Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to Defendant Landstar Onway, Inc. by mail at the following address:

Landstar Onway, Inc.
c/o #1 BOC-3 Filing, Inc.
c/o Ken Olsen, Esq.
33 Philhower Road
Lebanon, NJ 08833

_William C. Fitzpatrick_
WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

August 15, 2023
Alexandria, Virginia